**MCM LAW GROUP, P.C.**
Cesar O. Montoya (SBN: 320291)
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287

Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| SANTIAGO GARCIA DEL SOLAR<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security, *et al*.,<br><br>Respondents. | Case No.<br><br>**PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

## I. <u>INTRODUCTION</u>

1. Petitioner SANTIAGO GARCIA DEL SOLAR ("Petitioner"), through undersigned counsel, respectfully petitions this Honorable Court for a writ of habeas corpus under 28 U.S.C. § 2241. He challenges his continued detention following the custody redetermination hearing of August 27, 2026 — a hearing this

Court ordered on August 21, 2026, and which Petitioner alleges was not the hearing the Court ordered.

2. On August 21, 2026, in *Garcia Del Solar v. Mullin*, No. EDCV 26-4419-SPG (AS) (C.D. Cal.), this Court granted the writ in part. It ordered Respondents, within seven days, "to provide Petitioner Santiago Garcia Del Solar (A# XXX-XX2-442) with a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and all applicable regulations." Order Accepting Findings and Recommendations of United States Magistrate Judge, Dkt. 11, at 4 (Aug. 21, 2026) ("August 21 Order") (emphasis added) (Exhibit A).

3. The August 21 Order did not merely direct a hearing. It attached a self-executing consequence to a defective one: "to the extent that Respondents fail to provide Petitioner with a proper bond hearing within seven (7) days in compliance with this Court's Order, Respondents are enjoined from continuing to detain Petitioner." *Id.* (emphasis added). The word "proper" is the operative term of this Petition.

4. The hearing occurred on August 27, 2026, before Immigration Judge Darin Flagg at the Adelanto Immigration Court. Bond was denied. Order of the Immigration Judge, Aug. 27, 2026 ("August 27 Order") (Exhibit B).

5. Petitioner accepts, and does not challenge, two things this Court decided on August 21. First, the Court held that the remedy for the defects in Petitioner's initial detention was a bond hearing rather than immediate release. Second, the Court held — following *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 U.S. App. LEXIS 22798, at *5 (9th Cir. July 30, 2026) — that Petitioner, not the Government, bears the burden of demonstrating by a preponderance of the evidence that he is not a flight risk or a danger. **Nothing in this Petition asks the Court to revisit either ruling.** Petitioner does not re-argue his pre-deprivation due process theory, and he does not ask that the Government bear any burden.

6. What Petitioner does allege is narrower and entirely post-judgment. **A hearing at which the detainee bears the burden is still a hearing that must be conducted.** Section 1226(a) requires an individualized custody determination; it authorizes release on bond *or* on conditional parole, 8 U.S.C. § 1226(a)(2)(A)–(B); and a decision denying release must permit meaningful review of whether that determination was actually made. The August 27 Order, on its face, does none of these things.

7. The August 27 Order rests its flight-risk finding on three facts: that Petitioner entered without inspection in 2020, that he has worked without authorization since entering, and that he has not filed tax returns. August 27 Order

at 1. From these the Immigration Judge drew a single inference — that Petitioner's "inability or refusal to follow the laws of the United States is a substantial flight risk because it inferentially demonstrates he is more unlikely to comply with alternative to detention conditions and court orders." *Id.* (emphasis added). **Those three facts describe the entire class of noncitizens whom *Bostock* placed inside § 1226(a) one month earlier.** If they suffice, § 1226(a) is mandatory detention in all but name for every person present without admission and apprehended in the interior — precisely the result *Bostock* rejected.

8. The order then discounted Petitioner's family ties because of his family members' immigration status, reasoning that the flight-risk showing was "even more pronounced because his family ties to the United States consist of his wife, who has no status, and his four children, with only one having status." *Id.* It adjudicated the merits of a pending, unadjudicated I-589 application not before it, pronouncing the claim "generally . . . an insufficient basis of persecution" and "likely barred" by the one-year deadline, and then counted that prejudgment against Petitioner as a flight-risk factor. *Id.* It found Petitioner's proposed sponsor "not reliable nor credible" not because of anything he said, but because of his household finances. *Id.* And it acknowledged the one fact in the record bearing

directly on whether Petitioner will appear — "the Respondent did cooperate with ICE when caught" — and disposed of it in a single clause. *Id.*

9. The Immigration Judge made **no finding of dangerousness**. The sole asserted justification for Petitioner's continued confinement is risk of nonappearance. Yet the order's closing passage forecloses the very remedy the statute supplies for that risk: "even if the Court were inclined to grant a financial bond, which it is not, it could not do so as Javier has no apparent ability to pay the bond." *Id.* at 2. The Immigration Judge thus considered exactly one form of release — a financial bond — and concluded he was disabled from granting it because Petitioner's brother is not wealthy enough. The order did not meaningfully consider whether any nonfinancial condition or other less restrictive alternative could reasonably assure Petitioner's appearance. Alternatives to detention appear once in the order, and only inside the adverse inference: as something Petitioner is presumed unlikely to comply with, never as something the Immigration Judge evaluated.

10. The Ninth Circuit has held that "the consideration of the individual's financial circumstances, as well as of possible alternative release conditions, [is] necessary" to a constitutionally adequate custody determination, and that "the government has no legitimate interest in detaining individuals who have been

determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 990–91, 994 (9th Cir. 2017). The August 27 Order inverts that rule. It treats the sponsor's poverty as an affirmative flight-risk factor and as an absolute barrier to release, without ever asking whether any non-financial condition would reasonably assure appearance.

11. The distinction on which this Petition rests should be stated at the outset. Petitioner does not ask this Court to substitute its judgment for the Immigration Judge's discretionary weighing of permissible bond factors. He asks whether the August 27 proceeding constituted the individualized, constitutionally adequate custody determination the August 21 Order required, where the denial rested substantially on considerations that lack sufficient individualized probative value as to future nonappearance. Courts confronting this precise posture — a post-habeas bond hearing followed by an enforcement challenge — have held that it presents a constitutional question about whether the ordered hearing actually occurred, not a request for routine review of a discretionary bond decision. *Lemus Crispin v. Bondi*, 832 F. Supp. 3d 534, 542–43 (E.D. Va. 2026); *Mendez Trigueros v. Guadian*, No. 1:26-cv-205 (AJT/WBP), 2026 WL 2321978, at *2–*3 (E.D. Va.

Feb. 18, 2026); *Romero Lopez v. Blanche*, No. 1:26-cv-00938 (AJT/WBP), 2026 WL 1458901, at *2–*3 (E.D. Va. May 21, 2026).

12. Petitioner accordingly brings three claims, each arising from the August 27 hearing and none of which existed when this Court entered judgment on August 21. **Count One** alleges that Respondents failed to provide the "proper bond hearing" the August 21 Order required, triggering the injunction that Order already entered. **Count Two** alleges that the flight-risk determination was not meaningfully individualized and rested on factors bearing no rational nexus to any actual risk of nonappearance. **Count Three** alleges that continued detention violates due process because the Immigration Judge never meaningfully determined whether any less restrictive alternative could reasonably assure Petitioner's appearance.

13. Petitioner seeks immediate release. This Court has already determined what should happen if the ordered hearing was not properly provided; it enjoined further detention. August 21 Order at 4. Where a court grants conditional habeas relief and the government's attempted cure fails, "the petitioner should be released." *Harvest v. Castro*, 531 F.3d 737, 750 (9th Cir. 2008); accord *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020). This District applied that framework to a timely but non-compliant bond hearing and ordered immediate release in *Herrera Ramirez v. Blanche*, No. 5:26-cv-03938-DTB, 2026 WL 2395217, at

*10–*11 (C.D. Cal. Aug. 17, 2026), and again in *Arturo Hernandez Arechiga v. Bowen*, No. EDCV 26-1516-AS, 2026 U.S. Dist. LEXIS 115840, at *8–13 (C.D. Cal. May 26, 2026). Compliance "perhaps in form, but not in substance" is not compliance. *Tiboko-Tifuh v. Noem*, No. 26-cv-1215-JO-DEB, 2026 WL 1603795, at *4 (S.D. Cal. June 4, 2026).

14. In the alternative, Petitioner asks for a further hearing before a different Immigration Judge with release if that hearing is not timely and properly held.

**II. JURISDICTION**

15. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*

16. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). Relief is available under 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

17. Federal courts retain jurisdiction over constitutional challenges to immigration detention. *Jennings v. Rodriguez*, 583 U.S. 281 (2018). Petitioner seeks only individualized relief, which 8 U.S.C. § 1252(f)(1) expressly preserves "with respect to the application of such provisions to an individual alien." *See*

*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) (limiting only classwide injunctive relief restraining the operation of detention statutes).

18. Section 1226(e) is no bar. It "does not limit habeas jurisdiction over constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Nor does it "deprive federal court[s] of their habeas jurisdiction to review bond hearing determinations for constitutional claims and legal error." *Herrera Ramirez*, 2026 WL 2395217, at *7 (citation omitted). Where the question presented is whether the factors relied upon bore a sufficient evidentiary connection to flight risk, § 1226(e) does not displace the court's jurisdiction. *Romero Lopez v. Blanche*, 2026 WL 1458901, at *2.

19. Section 1252(a)(2)(B)(ii) is likewise no bar. It reaches only purely discretionary determinations; it does not reach "mixed question[s] of law and fact," where "the analysis and outcome is governed by a legal standard that must be correctly applied to the presented facts." *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). Whether an Immigration Judge conducted the individualized inquiry § 1226(a) requires, and whether he considered the release options that statute authorizes, are questions of law. And § 1252(a)(2)(B)(ii) "does not strip the Court of jurisdiction to assess compliance with its own order." *Tiboko-Tifuh*, 2026 WL 1603795, at *1–*2.

20. The distinction matters and Petitioner observes it throughout. A challenge to the process afforded at a court-ordered bond hearing is analytically distinct from an invitation to review the bond denial itself. *See A.S.M. v. Lyons*, 2026 WL 2517284, at *2–5 (N.D. Ill. Aug. 26, 2026). **Petitioner does not ask this Court to reweigh the evidence the Immigration Judge considered or to substitute its judgment on whether he is in fact a flight risk.** He asks the Court to determine whether the inquiry the August 21 Order and the Due Process Clause require was performed at all. *Cf. Herrera Ramirez*, 2026 WL 2395217, at *8 (on review of a bond determination the court "does not reweigh the evidence; it asks whether the Immigration Judge applied the correct legal standard") (citing *Martinez v. Clark*, 124 F.4th at 785).

21. A flight-risk determination is not immune from review as a matter of unreviewable discretion. Because the governing custody factors supply a legal framework against which the adjudicator's reasoning may be measured, *see Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006), flight risk presents a reviewable mixed question of law and fact. *Tiboko-Tifuh v. Noem*, No. 26-cv-1215-JO-DEB, 2026 WL 1603795, at *1–*2 (S.D. Cal. June 4, 2026); *accord Martinez v. Clark*, 124 F.4th at 783. Courts have accordingly exercised jurisdiction to determine whether the factors an Immigration Judge relied upon were constitutionally permissible —

that is, whether they bore a sufficient evidentiary connection to flight risk — while declining to disturb the weight assigned to them. *Mendez Trigueros v. Guadian*, 2026 WL 2321978, at *2–*3; *Romero Lopez v. Blanche*, 2026 WL 1458901, at *2; *Lemus Crispin v. Bondi*, 832 F. Supp. 3d at 542–43. A flight-risk determination is likewise reviewable for abuse of discretion, which occurs where the decision is "arbitrary, irrational, or contrary to law," *Pleitez-Lopez v. Barr*, 935 F.3d 716, 719 (9th Cir. 2019), or where the adjudicator "fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief," *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012); *accord Miri v. Bondi*, No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *5 (C.D. Cal. Mar. 5, 2026) (flight risk is "a mixed question of law and fact which is reviewable by the district court as a question of law").

22. This District has entertained precisely such a challenge. In *Gonzalez Reyes v. Rios*, No. EDCV 26-3830 JGB (DFM), 2026 WL 2190830, at *3–*6 (C.D. Cal. July 28, 2026), the court reached a habeas challenge directed at an Immigration Judge's flight-risk finding following a prior bond hearing, where the denial rested on unlawful entry, unauthorized work and asserted disrespect for United States law, the stage and strength of the noncitizen's immigration relief, and

the sponsor's inability to pay a substantial bond. Those are, in substance, the grounds on which bond was denied here.

23. The protections of the writ extend to persons in immigration detention, and district courts retain jurisdiction under § 2241 over habeas challenges to immigration detention that are sufficiently independent of the merits of any removal order. No claim here touches the merits of removal.

## III. VENUE

24. Venue is proper in this District under 28 U.S.C. § 1391(e)(2). Petitioner is detained by Respondents at the **Adelanto ICE Processing Center** in Adelanto, California, which lies within this District and Division, and the officer in charge of custody decisions in Petitioner's case is located within this judicial district.

25. Petitioner is subject at any time to transfer to another ICE detention facility. Undersigned counsel has no notice of any planned transfer and requests that Petitioner remain within the jurisdiction of this Court pending resolution of this Petition.

## IV. NOTICE OF RELATED CASE AND PROPRIETY OF THIS PETITION

### A. This Petition is related to *Garcia Del Solar v. Mullin*, No. EDCV 26-4419-SPG (AS).

26. This Petition arises from Respondents' conduct under the judgment entered in *Garcia Del Solar v. Mullin*, No. EDCV 26-4419-SPG (AS) (C.D. Cal.), and is filed as a related case under Local Rule 83-1.3. The two actions call for determination by the same judge because this Petition requires construction of the August 21 Order and would entail substantial duplication of labor if heard by a different judge.

27. Petitioner respectfully submits that the Court may, in its discretion, treat this filing as a motion to enforce the August 21 Order in No. EDCV 26-4419-SPG (AS). A district court that grants conditional habeas relief retains jurisdiction to determine whether its condition was satisfied. *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020); *Harvest v. Castro*, 531 F.3d 737, 750 (9th Cir. 2008). Compliance with a district court's judgment is properly reviewed by the district court that entered it. *Mau v. Chertoff*, 562 F. Supp. 2d 1107, 1114 (S.D. Cal. 2008); *N.A. v. Warden, Adelanto Detention Facility*, 2026 WL 1045196, at *6 (C.D. Cal. Apr. 15, 2026); *Wu v. Santacruz*, 2026 WL 2058439, at *2 (C.D. Cal. July 14, 2026). *Herrera Ramirez* proceeded in that posture. 2026 WL 2395217, at *6–*8.

**B. No gatekeeping or equitable bar applies.**

28. The statutory gatekeeping provisions do not reach this Petition. Section 2244(a) by its terms addresses detention "pursuant to a judgment of a court of the

United States," and § 2244(b) applies to petitions under 28 U.S.C. § 2254. Neither bars a § 2241 petition filed by an immigration detainee who is not in custody pursuant to a court judgment. *Barapind v. Reno*, 225 F.3d 1100, 1111 (9th Cir. 2000).

29. Every claim in this Petition arises from a hearing that took place six days after judgment was entered. None could have been raised on August 21, because the conduct complained of had not yet occurred.

30. Petitioner is mindful of the distinction between a genuinely new post-judgment claim and an untimely request to reconsider a prior ruling, and he has drafted this Petition to stay on the correct side of it. He therefore states plainly what this Petition does not do:

(a) It does not re-assert the theory that Petitioner's initial detention without a pre-deprivation hearing entitles him to release. This Court rejected that argument on August 21, and Petitioner does not seek its reconsideration.

(b) It does not ask the Court to place any burden of proof on the Government. This Court rejected that request on August 21 in light of *Bostock*, and Petitioner accepts that ruling. Every claim below is framed on the premise that Petitioner bore the burden by a preponderance of the evidence.

(c) It does not ask the Court to reweigh the evidence before the Immigration Judge, to make its own flight-risk finding, or to disturb any factual determination as clearly erroneous.

31. What remains is the narrow question this Court expressly reserved to itself when it made continued detention conditional on a "proper bond hearing": whether the hearing Respondents provided was the hearing the Court ordered, and whether it satisfied the minimum requirements of § 1226(a) and the Due Process Clause.

**V. PARTIES**

32.Petitioner SANTIAGO GARCIA DEL SOLAR, **A-Number 221-462-442**, is a native and citizen of Mexico. He entered the United States without inspection in 2020. He is detained at the **Adelanto ICE Processing Center** in Adelanto, California.

33.Respondent MARKWAYNE MULLIN is sued in his official capacity as Secretary of the U.S. Department of Homeland Security. He is responsible for the implementation and enforcement of the INA and oversees U.S. Immigration and Customs Enforcement ("ICE"), the component agency responsible for Petitioner's detention. He is a legal custodian of Petitioner.

34.Respondent TODD BLANCHE is sued in his official capacity as Attorney General of the United States. In that capacity he oversees the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals ("BIA").

35.Respondent DAVID J. VENTURELLA is sued in his official capacity as Acting Director of ICE. He is a legal custodian of Petitioner and has authority to release him.

36.Respondent ERNESTO SANTACRUZ JR. is sued in his official capacity as Acting Director of the Los Angeles ICE Field Office. He is charged with the detention and removal of noncitizens falling under the jurisdiction of that Field Office and is a legal custodian of Petitioner.

37.Respondent WARDEN, Adelanto ICE Processing Center, is sued in his or her official capacity as the warden of the facility where Petitioner is held. The Warden has immediate physical custody of Petitioner and is Petitioner's immediate custodian. *See Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024).

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

38.Administrative exhaustion is not statutorily required in proceedings under 28 U.S.C. § 2241. It is a prudential, judicially created doctrine, and a failure to exhaust does not deprive this Court of jurisdiction. *Hernandez v. Sessions*, 872 F.3d

976, 988 (9th Cir. 2017); *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004); *see also Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

39. Whether to require or excuse prudential exhaustion "lies within the discretion of the district court." *Herrera Ramirez*, 2026 WL 2395217, at *6–*7. A district court is "in the best position to decide whether exhaustion was warranted under the circumstances before it." *Diaz Reyes v. Mayorkas*, 854 F. App'x 190, 191 (9th Cir. 2021) (Mem.). Petitioner asks this Court to exercise that discretion here.

40. Petitioner has preserved his administrative remedies notwithstanding this filing. He reserved appeal of the August 27 denial. His notice of appeal to the BIA is due September 28, 2026. This Petition is therefore not an attempt to substitute federal litigation for an appeal he has abandoned; it is a request that this Court resolve, now, questions the Board cannot resolve in time to matter.

**A. Exhaustion does not apply to enforcement of this Court's own order.**

41. Count One asserts that Respondents failed to comply with a conditional order of this Court. No authority requires a petitioner to exhaust administrative remedies before making that assertion. Courts confronted with that argument have declined to impose an exhaustion requirement. *See Herrera Ramirez*, 2026 WL 2395217, at *6–*7 (excusing exhaustion where the petitioner claimed that respondents had failed to comply with a court's conditional release order).

42. The reason is structural. The question presented by Count One is not whether the Immigration Judge correctly weighed the *Guerra* factors. It is whether he did what this Court told him to do. That is a legal determination for the court that issued the order. *N.A. v. Warden, Adelanto Detention Facility*, 2026 WL 1045196, at *6 (C.D. Cal. Apr. 15, 2026) (district court is best positioned to determine whether its own order was followed); *Mau v. Chertoff*, 562 F. Supp. 2d 1107, 1114 (S.D. Cal. 2008).

**B. The *Puga* factors favor waiver.**

43. Prudential exhaustion may be required when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Hernandez v. Sessions*, 872 F.3d at 988; *see also Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Each factor favors waiver here.

**1. Agency expertise is not implicated.**

44. Respondents may argue, as they have elsewhere, that the BIA has subject matter expertise in reviewing individual bond decisions and can generate a more complete record. That argument does not answer the question actually presented.

The "review" Petitioner seeks is a determination of whether the Immigration Judge complied with this Court's August 21 Order and whether the resulting proceeding satisfied the Due Process Clause. It is not apparent how the Board's expertise in bond adjudication puts it in a better position than the judge who wrote the order to say what that order required.

45. The point has particular force here. The magistrate judge's Report recommended that Petitioner receive an individualized bond hearing under § 1226(a). It was this Court, in the August 21 Order, that added the operative language — that the hearing be conducted "pursuant to 8 U.S.C. § 1226(a) and all applicable regulations," and that Respondents be "enjoined from continuing to detain Petitioner" if a "proper bond hearing" was not provided within seven days. August 21 Order at 4. This Court, not the Board, is in the superior position to determine what those words required and whether they were honored.

46. The Board's institutional competence is further limited as to Counts Two and Three. The Board "lacks jurisdiction to decide the constitutionality" of the proceedings it reviews. *Matter of C-*, 20 I&N Dec. 529 (BIA 1992). The Ninth Circuit has long recognized an exhaustion exception for constitutional challenges to agency procedures that the agency has no power to adjudicate. *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994). District courts in this Circuit have applied

that principle to waive exhaustion for constitutional challenges to bond proceedings. *Avalo Jimenez v. Chestnut*, No. 1:26-cv-04128-NW, 2026 WL 2323047 (E.D. Cal. Aug. 11, 2026); *Gallosa-Zapata v. Warden*, 2026 WL 2410945 (C.D. Cal. Aug. 17, 2026).

**2. Petitioner has not bypassed the administrative scheme.**

47. A "key consideration" in the waiver analysis is whether relaxation "would encourage the deliberate bypass of the administrative scheme." *Laing*, 370 F.3d at 1000; *see also Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003). Petitioner has bypassed nothing. He sought a custody redetermination and was heard on July 24, 2026; the Immigration Judge denied bond on the ground that he lacked jurisdiction under *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). He came to this Court and obtained an order. He returned to the immigration court on August 27, 2026 and was denied again. He now returns here, having used every avenue in sequence and having reserved his appeal.

48. Nor is the issue a recurring one that the administrative process should be permitted to develop. Whether Immigration Judge Flagg complied with Judge Garnett's August 21 Order in Petitioner's case is a one-time question, not a question of general immigration policy on which the agency's views would assist.

**3. Administrative review cannot supply a timely remedy.**

49. The Department waived appeal of the August 27 denial. August 27 Order at 3. Because the Department waived, the Board's docket is the only route by which the denial could be revisited administratively, and the outcome of that route — months from now — would at best be a remand for yet another custody hearing. Petitioner would remain detained throughout.

50. That is not an adequate remedy. "[E]ven a later favorable BIA result would not remedy the prolonged detention" a petitioner suffers in the interim. *Kumar v. Rios*, 2026 WL 1764923, at *3 (C.D. Cal. June 12, 2026); *accord Sanchez v. Santacruz*, 2026 WL 118961 (C.D. Cal. Apr. 30, 2026) (waiting for Board review can cause irreparable injury through continued detention); *Rufino Ligario Hernandez v. Mullin*, No. 5:26-cv-00585-JAK-ADS, 2026 WL 846037 (C.D. Cal. Mar. 24, 2026). Exhaustion may be waived where administrative remedies "are inadequate or not efficacious, irreparable injury would result, or the administrative proceedings would be void," and where pursuing them "would be futile." *Laing*, 370 F.3d at 1000. The delay is not speculative. EOIR's own data reflected an average processing time of 204 days for bond appeals in 2024, *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025), and courts have since observed that the Board affirmed approximately 97% of immigration appeals in 2025 — a rate exceeding its sixteen-year average by at least thirty

percentage points — so that Board review cannot be expected to do more than "rubberstamp IJ bond denials and facilitate noncitizen removal." *Perez Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *3 & n.2 (S.D. Cal. Apr. 16, 2026); *see Tiboko-Tifuh*, 2026 WL 1603795, at *3.

51. There is "little sense in requiring" a party to present a claim "to an adjudicator powerless to grant the relief requested." *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 895 (9th Cir. 2021) (discussing *Carr v. Saul*, 141 S. Ct. 1352, 1361 (2021)); *see also El Rescate Legal Servs., Inc. v. EOIR*, 959 F.2d 742, 747 (9th Cir. 1991); *Zaragoza Mosqueda v. Noem*, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025). The Board cannot declare that Respondents failed to comply with a federal court's injunction, and it cannot enforce that injunction. Only this Court can.

52. Finally, requiring exhaustion would prolong the very detention this Court's August 21 Order was entered to bring under constitutional supervision, and would render the conditional terms of that Order effectively unenforceable. *Tiboko-Tifuh* declined to require Board exhaustion for exactly those two reasons — that it would prolong an allegedly unconstitutional detention and would undermine the prior federal order. 2026 WL 1603795, at *3–*4. A conditional writ whose condition can be tested only after months of Board review is not a conditional writ at all. *See Leon Yero v. U.S. Gen. Att'y*, No. 1:26-cv-04312-DAD-JDP, 2026 WL

1707102 (E.D. Cal. June 12, 2026) (waiving exhaustion notwithstanding a prior bond hearing).

**C. Petitioner acknowledges contrary authority.**

53. Petitioner acknowledges that district courts within this Circuit have reached differing conclusions on whether prudential exhaustion applies to enforcement of bond-hearing orders, and that some courts have required exhaustion where a petitioner challenges a bond denial without appealing it. *See, e.g.*, *Martinez v. Scott*, 2025 WL 2689844 (W.D. Wash. Aug. 27, 2025), *R&R adopted*, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025); *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003). Those authorities address the ordinary case in which the only question is whether an Immigration Judge correctly exercised bond discretion. They do not address the case in which a federal court has already granted a conditional writ, made continued detention contingent on a "proper" hearing, and enjoined further detention if one is not provided. That is this case.

**VII. STATEMENT OF FACTS**

**A. Petitioner's Residence, Family, and Community Ties.**

54.Petitioner entered the United States without inspection in 2020. He has resided in this country continuously since that time — approximately six years.

55.This Court has already found, on the record before it, that Petitioner "holds a private liberty interest, given that he has lived continuously for at least five years in the United States with his wife and children." August 21 Order at 2 (citing Report at 7–8).

56. Petitioner is married. He and his wife have four children. August 27 Order at 1. Petitioner resides with his family, contributes to the household, and shares in the daily care of his children.

57. Petitioner has a brother, Javier, who resides in the United States with his wife and child and operates a gardening business. *Id.* at 2. Javier offered to serve as Petitioner's sponsor upon release and appeared in the bond proceeding in that capacity.

58. Petitioner has worked since entering the United States.

59. Petitioner has no criminal convictions. He has no prior removals, no prior voluntary departures or returns, and no prior order of supervision. He has never failed to appear for any hearing in any court. He has a residence available to him upon release.

60. Petitioner has an application for asylum, withholding of removal, and protection under the Convention Against Torture (Form I-589) pending before the

immigration court. August 27 Order at 1. That application has not been adjudicated. No hearing on the merits has been held.

**B. Petitioner's Detention and the First Custody Denial.**

61. Petitioner was taken into ICE custody on or about June 18, 2026. This is the first time he has ever been detained by immigration authorities. August 21 Order at 2 ("His current detention is the first time he has been detained by ICE."). He was not previously detained and released on an order of supervision, and he had no prior interactions with immigration authorities.

62. Petitioner cooperated with ICE at the time of his apprehension. The August 27 Order expressly so finds: "the Respondent did cooperate with ICE when caught." August 27 Order at 1.

63. Petitioner sought a custody redetermination. On July 24, 2026, the Immigration Judge denied bond, holding that he lacked jurisdiction to grant relief under 8 U.S.C. § 1225 in light of *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). August 21 Order at 2.

64. *Yajure Hurtado* has since been vacated. *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 813 F. Supp. 3d 1084 (C.D. Cal. 2025); *see* August 21 Order at 2. And the theory on which the July 24 denial rested is now foreclosed by *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 U.S. App. LEXIS

22798, at *3 (9th Cir. July 30, 2026) (holding that noncitizens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)).

**C. The First Habeas Action and the August 21, 2026 Judgment.**

65. Petitioner filed his first petition under 28 U.S.C. § 2241 in *Garcia Del Solar v. Mullin*, No. EDCV 26-4419-SPG (AS) (C.D. Cal.). The magistrate judge issued a Report and Recommendation recommending that the petition be granted in part.

66. On August 21, 2026, this Court accepted and adopted the Report and entered judgment. It made four rulings material here.

(a) It granted the petition in part and ordered that, "[w]ithin seven (7) days of the date of this Order, Respondents are ORDERED to provide Petitioner Santiago Garcia Del Solar (A# XXX-XX2-442) with a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and all applicable regulations." August 21 Order at 4 (emphasis added).

(b) It enjoined continued detention if that hearing was not properly provided: "to the extent that Respondents fail to provide Petitioner with a proper bond hearing within seven (7) days in compliance with this Court's Order,

Respondents are enjoined from continuing to detain Petitioner." *Id.* (emphasis added).

(c) It required a status report within eight days advising the Court whether Petitioner had received a bond hearing, the outcome, and Respondents' compliance with the Order. *Id.*

(d) It denied Petitioner's request for immediate release and overruled his objection that the Government bear the burden of proof by clear and convincing evidence, holding that under *Bostock* a § 1226(a) detainee "bears the burden to demonstrate[] by a preponderance of the evidence that he is not a flight risk or a danger to the community." *Id.* at 3.

67.Petitioner accepts rulings (c) and (d) and does not challenge them. This Petition concerns rulings (a) and (b), and the Fifth Amendment floor that governs any hearing held under them.

**D. The August 27, 2026 Court-Ordered Hearing.**

68. The court-ordered hearing took place on August 27, 2026 — within the seven-day period — before Immigration Judge Darin Flagg of the Adelanto Immigration Court. It was presided over by an Immigration Judge. To that extent the hearing was timely and facially conforming.

69. Bond was denied. The Immigration Judge issued a written order the same day. August 27 Order (Exhibit B).

70. The order allocates the burden to Petitioner and applies it. It states: "IN RE TRO ORDER: The District Court order expressly rejects the attempt to place the burden on the Department. Instead, the order places the burden on the Respondent. This Court finds the Respondent has failed to meet his burden to demonstrate that he is not a flight risk. As such, bond is denied." *Id.* at 1. Petitioner does not dispute that this allocation was correct.

71. **The order makes no finding of dangerousness.** The words "danger" and "dangerous" do not appear. The sole asserted ground for continued detention is risk of nonappearance.

72. **The order's first flight-risk rationale is Petitioner's immigration status and its ordinary incidents.** The Immigration Judge wrote: "The Respondent has demonstrated in the past an inability or refusal to follow the laws of the United States. This is demonstrated by his illegal entry without inspection in 2020. It is also demonstrated by the fact he has worked without authorization since entering the United States. It is also demonstrated by the fact that he has not filed taxes since entering the United States despite working. This inability or refusal to follow the laws of the United States is a substantial flight risk because it

inferentially demonstrates he is more unlikely to comply with alternative to detention conditions and court orders, including an order of removal. See Matter of A-L-S, 29 I&N Dec. 794 (BIA 2026). While the Respondent did cooperate with ICE when caught, that fact alone does not negate the past inability and refusal to follow the laws." *Id.*

73. **The order's second flight-risk rationale is the Immigration Judge's own prediction about the merits of an unadjudicated application.** He wrote: "The Respondent also has speculative relief. His I-589, which is the only form of relief filed to date, is based upon gang recruitment and violence, which generally is an insufficient basis of persecution. His claim for asylum is also likely barred by the failure to file within one year. This speculative relief is yet another flight risk factor. See A-L-S, supra." *Id.*

74. **The order discounts Petitioner's family ties on the basis of his family members' immigration status.** Immediately following the passage above, the Immigration Judge wrote that the flight-risk showing "is even more pronounced because his family ties to the United States consist of his wife, who has no status, and his four children, with only one having status." *Id.*

75. **The order's third flight-risk rationale is the sponsor's household finances.** The Immigration Judge wrote: "Finally, the Respondent's proposed

sponsor, his brother Javier, is not reliable nor credible given the lack of financial stability. This is yet another flight risk factor. *See* Matter of Dobrotvorskii, 29 I&N Dec. 211 (BIA 2025). No tax filings were produced for the sponsor. There are bank statements but those statements reflect Javier generally spends more per month than he earns. Javier runs a gardening business and appears to employ the Respondent on occasion, despite the fact that Respondent has no work authorization. Thus, Javier is also violating United States laws. Respondent also testified that Javier's rent is $2,500 per month and Respondent's rent is $4,000. Javier also has a wife and child to support." *Id.* at 1–2.

76. **The order closes by declaring release unavailable because the sponsor cannot pay.** "Given the apparent negative balance month over month, it is unclear to the Court how Javier would finance a bond and/or the living expenses of the Respondent. Therefore, even if the Court were inclined to grant a financial bond, which it is not, it could not do so as Javier has no apparent ability to pay the bond." *Id.* at 2.

77. **The order nowhere considers release on conditional parole or on any non-financial condition of supervision.** The only reference to alternatives to detention appears inside the adverse inference quoted above — as conditions Petitioner is presumed unlikely to comply with. The order contains no finding that

any particular condition, or combination of conditions, would fail to reasonably assure Petitioner's appearance. It contains no finding as to Petitioner's own financial circumstances or ability to post any amount.

78. The Department waived appeal. Petitioner reserved appeal. His notice of appeal is due September 28, 2026. *Id.* at 3.

79. Petitioner remains detained at the Adelanto ICE Processing Center.

## VIII. CLAIMS FOR RELIEF

### COUNT ONE — Respondents Failed to Provide the "Proper Bond Hearing" Required by This Court's August 21, 2026 Order

80. Petitioner incorporates by reference each preceding paragraph.

81. The August 21 Order required two things of the hearing it compelled: that it be conducted "pursuant to 8 U.S.C. § 1226(a) and all applicable regulations," and that it be a "proper bond hearing . . . in compliance with this Court's Order." August 21 Order at 4. The Order attached a consequence to failure: an injunction against continued detention. *Id.*

82. Those words must carry content. Had the Court meant only that some proceeding be convened before an Immigration Judge within seven days, it would not have added the qualifiers "proper," "in compliance with this Court's Order," and "all applicable regulations," and it would have had no occasion to enjoin

detention as the consequence of a hearing that occurred. A hearing that is held but does not do what § 1226(a) requires is not a "proper" hearing.

83. This District has repeatedly so held. Compliance "perhaps in form, but not in substance" is not compliance. *Tiboko-Tifuh v. Noem*, No. 26-cv-1215-JO-DEB, 2026 WL 1603795, at *4 (S.D. Cal. June 4, 2026). In *Herrera Ramirez*, the Immigration Judge held the ordered hearing and even recited the standard the district court had prescribed; the district court nonetheless found non-compliance because the reasoning did not actually perform the required analysis, giving only "lip service" to it. 2026 WL 2395217, at *9–*10. The governing "principle is application, not recitation." *Id.* Accord *Dubrovskii v. Warden*, 2026 WL 2475518, at *6–*7 (E.D. Cal. Aug. 24, 2026); *Harman-Sing Singh v. Warden of the Cal. City Det. Facility*, 2026 WL 2475601, at *1–*2 (E.D. Cal. Aug. 24, 2026).

84. Petitioner recognizes that *Herrera Ramirez*, *Tiboko-Tifuh*, *Dubrovskii*, and *Harman-Sing Singh* each involved an order specifying a clear-and-convincing burden, and that no such burden applies here. That distinction does not diminish the principle; it isolates it. Those cases stand for the proposition that a court-ordered hearing must actually perform the analysis the order required, whatever that analysis is. Here the required analysis was an individualized custody

determination "pursuant to § 1226(a) and all applicable regulations," with Petitioner bearing the burden by a preponderance. The question is whether that determination was made. In any event, the principle is not confined to clear-and-convincing cases. In *Lemus Crispin*, *Lucas Juarez*, *Mendez Trigueros*, and *Romero Lopez*, the ordered hearing placed the burden on the noncitizen — in each, the Immigration Judge denied bond because the noncitizen had not "established that he is not a risk of flight" or had "failed to meet his burden" — and in each the district court nonetheless held the hearing constitutionally deficient and ordered release or a new hearing. 832 F. Supp. 3d at 541, 544–45; 2026 WL 1419122, at *2–*3, *6–*8; 2026 WL 2321978, at *1, *3; 2026 WL 1458901, at *1, *3. A petitioner-borne burden is a burden to be carried at a hearing that actually occurs; it is not a substitute for the hearing.

85. The theory of Count One can be stated in a single sentence. **The August 27 hearing satisfied the August 21 Order in form but not in substance, because the flight-risk determination relied on generalized proxies and unsupported inferences rather than a reasoned, individualized assessment of whether Petitioner is likely to fail to appear, and because it never asked whether any condition short of detention would address that risk.** The three subsections that

follow identify the respects in which the hearing departed from what the Order required.

86. That a hearing was in fact convened does not end the inquiry. In *Lucas Juarez v. Perry*, No. 1:26-cv-563 (LMB/IDD), 2026 WL 1419122, at *6–*7 (E.D. Va. May 20, 2026), appeal filed sub nom. Lucas Juarez v. Elliston (4th Cir. July 27, 2026), the district court enforced its prior habeas judgment even though the Immigration Judge had conducted the ordered hearing, because the resulting denial rested on unlawful entry, unauthorized work, weak prospects for relief, sponsor deficiencies, and questions regarding residence rather than on an individualized assessment. The court granted enforcement and ordered a new, constitutionally compliant § 1226(a) hearing before a different Immigration Judge. The same reasoning applies here. *Accord Lemus Crispin v. Bondi*, 832 F. Supp. 3d 534, 544–45 (E.D. Va. 2026).

**A. The hearing did not apply § 1226(a), because it considered only one of the two release mechanisms the statute authorizes.**

87. Section 1226(a) provides that pending a decision on removal the Attorney General "may continue to detain the arrested alien" and "may release the alien on — (A) bond of at least $1,500 . . . ; or (B) conditional parole." 8 U.S.C. § 1226(a)(1)–(2). The two subsections are disjunctive and co-equal. A custody

determination "pursuant to § 1226(a)" is a determination that considers the statutory options § 1226(a) supplies.

88. The August 27 Order considered one. Its dispositive sentence reads: "even if the Court were inclined to grant a financial bond, which it is not, it could not do so as Javier has no apparent ability to pay the bond." August 27 Order at 2 (emphasis added). Conditional parole under § 1226(a)(2)(B) requires no payment by anyone. It is not mentioned. Neither is any condition of supervision — reporting, telephonic monitoring, electronic monitoring, curfew, address verification, or any combination.

89. The consequence is that the Immigration Judge treated himself as disabled from releasing Petitioner by a fact — the sponsor's household budget — that has no bearing on the availability of § 1226(a)(2)(B) at all. A determination that forecloses release on that ground has not applied § 1226(a); it has applied § 1226(a)(2)(A) alone and treated the statute as exhausted.

**B. The hearing did not apply "all applicable regulations," because it did not perform an individualized custody assessment.**

90. The regulatory framework the August 21 Order incorporated contemplates an individualized custody determination in which the Immigration Judge assesses the particular noncitizen before him. *See* 8 C.F.R. §§ 1003.19,

1236.1(c)(8). The BIA's own framework is to the same effect: custody determinations turn on factors particular to the individual, including family ties, length of residence, employment history, record of appearance at proceedings, and the likelihood that relief will be granted. *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).

91.As set out in Count Two, the August 27 Order's flight-risk analysis rests on three attributes shared by essentially every § 1226(a) detainee who entered without inspection, on a prejudgment of an unadjudicated application, on the immigration status of Petitioner's wife and children, and on a third party's finances. It contains no individualized finding connecting anything specific about Petitioner to a risk that he will not appear — and it sets aside without analysis the one record fact that bears directly on that question.

**C. The written order does not permit meaningful review of whether the required determination was made.**

92. A custody decision denying release must provide reasons sufficient to permit meaningful review. *Singh v. Holder*, 638 F.3d 1196, 1208–09 (9th Cir. 2011); *Mingxing Sun v. Mullin*, No. 5:26-cv-02221-JWH-DMK, 2026 U.S. Dist. LEXIS 135167, at *1–2 (C.D. Cal. June 17, 2026) (approving requirement of an oral or written statement of reasons sufficient to permit meaningful review). **The**

**issue is not the length of the explanation, but whether it reveals the individualized reasoning necessary to determine that the governing standard was actually applied.** See *Tiboko-Tifuh*, 2026 WL 1603795, at *3–*4.

93. The August 27 Order acknowledges that Petitioner cooperated with ICE and then states only that "that fact alone does not negate the past inability and refusal to follow the laws." August 27 Order at 1. It does not meaningfully address that cooperation. It does not weigh Petitioner's six years of continuous residence, his marriage, his four children, his household, or his unblemished record of appearance — the very ties this Court found sufficient to establish a protected liberty interest. August 21 Order at 2. On this record, the Court cannot determine that the individualized assessment § 1226(a) requires occurred.

**D. The remedy for a failed cure is release.**

94. This Court entered a conditional order. Where a court grants conditional habeas relief and the government's attempted cure does not satisfy the condition, release follows. *Harvest v. Castro*, 531 F.3d 737, 750 (9th Cir. 2008); *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020) (district court retains jurisdiction to determine compliance; failure to cure the constitutional error can require immediate release); *see also Hilton v. Braunskill*, 481 U.S. 770 (1987); *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013).

95. The August 21 Order already made that determination for this case. It did not provide that a defective hearing would be followed by another hearing; it provided that Respondents "are enjoined from continuing to detain Petitioner." August 21 Order at 4. Petitioner asks the Court to give effect to the injunction it entered.

96. This District has ordered release on materially analogous circumstances. In *Arturo Hernandez Arechiga v. Bowen*, the district court had afforded Respondents an opportunity to cure through a court-ordered custody hearing. The hearing was held; the Immigration Judge denied release through a conclusory finding without meaningfully applying the standards the district court had prescribed. Having already afforded one opportunity to cure, the court did not order another hearing — it ordered immediate release, without reporting requirements, GPS monitoring, electronic monitoring, or any other restraint on liberty. No. EDCV 26-1516-AS, 2026 U.S. Dist. LEXIS 115840, at *8–13 (C.D. Cal. May 26, 2026). *Herrera Ramirez* reached the same result on a timely but non-compliant hearing. 2026 WL 2395217, at *10–*11. So did *Zavala v. Semaia*, No. 5:26-CV-03824-DSR, 2026 WL 2291230 (C.D. Cal. Aug. 7, 2026), and *Munguia v. Warden*, 2026 WL 2434853 (C.D. Cal. Aug. 19, 2026). Where a court has instead ordered a further compliant hearing before a different Immigration

Judge as the enforcement remedy, it has done so on the same premise — that the first hearing did not deliver the individualized determination the judgment required. *Lucas Juarez v. Perry*, 2026 WL 1419122, at *8.

97. Release restores "the last uncontested status which preceded the pending controversy." *Diaz Hernandez v. Blanche*, No. 5:26-cv-04187-AJR, 2026 WL 2281008, at *5 (C.D. Cal. Aug. 4, 2026); *see Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("the traditional function of the writ is to secure release from illegal custody").

**COUNT TWO — Fifth Amendment Procedural Due Process: The Flight-Risk Determination Was Not Meaningfully Individualized and Rested on Factors Without a Rational Nexus to Risk of Nonappearance**

98. Petitioner incorporates by reference each preceding paragraph.

99. The Due Process Clause "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "[T]he government's discretion to incarcerate noncitizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

100. Due process "protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

101. The constitutional adequacy of the procedure Petitioner received is measured under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), as applied to immigration detention in *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207–10 (9th Cir. 2022). *Rodriguez Diaz* upheld § 1226(a)'s framework precisely because it delivers "an initial bond hearing before a neutral decisionmaker" at which the detainee receives an individualized custody determination, with rights of appeal and redetermination. 53 F.4th at 1211; *see* August 21 Order at 1–2 (quoting the same passage). The constitutional sufficiency of the statute therefore depends on the individualized character of the determination it promises.

102. **This claim does not ask the Court to reweigh evidence.** Whether an adjudicator applied the correct legal framework to the facts presented is a mixed question of law and fact, reviewable notwithstanding § 1252(a)(2)(B)(ii). *Martinez v. Clark*, 124 F.4th 775, 783, 785 (9th Cir. 2024); *Herrera Ramirez*, 2026 WL 2395217, at *8. Petitioner challenges the method of analysis, not the ultimate weighing.

103. The governing principle may be stated compactly. **Due process requires more than the identification of adverse facts. The facts relied upon must bear a reasoned evidentiary connection to the statutory inquiry actually before the adjudicator — whether this particular detainee is likely to fail to appear.** A determination that recites true but generic facts, without explaining how they predict nonappearance by this person, is not the individualized determination § 1226(a) promises and on which *Rodriguez Diaz* rested. *Tiboko-Tifuh*, 2026 WL 1603795, at *3–*4; *Mendez Trigueros v. Guadian*, 2026 WL 2321978, at *2; *Romero Lopez v. Blanche*, 2026 WL 1458901, at *2; *Lemus Crispin v. Bondi*, 832 F. Supp. 3d at 544–45.

**A. The order's core rationale would render § 1226(a) mandatory detention for the entire class *Bostock* placed within it.**

104. The order's flight-risk holding rests on three facts: entry without inspection in 2020; working without authorization since entry; and not filing tax returns while working. August 27 Order at 1. From these it infers an "inability or refusal to follow the laws of the United States" and, from that, that Petitioner is "more unlikely to comply with alternative to detention conditions and court orders." *Id.*

105. One month before the hearing, the Ninth Circuit held "that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, 2026 U.S. App. LEXIS 22798, at *3. The class *Bostock* moved into § 1226(a) is, by definition, composed of people who entered without inspection. Working without authorization and the tax consequences that follow are the ordinary incidents of that status, not distinguishing characteristics of any individual within it.

106. A rationale that applies with equal force to every member of a statutory class is not an individualized determination of that class member's risk. If entry without inspection, unauthorized work, and unfiled taxes establish "substantial flight risk," then no person in Petitioner's position can ever carry a preponderance burden, and the discretionary bond regime *Bostock* held applicable becomes mandatory detention in substance. Section 1226(a) does not permit that result, and *Rodriguez Diaz* sustained § 1226(a) on the opposite premise. Courts have identified this precise danger. *Romero Lopez* reasoned that unauthorized or undocumented employment is often inseparable from unlawful immigration status, and warned that treating those circumstances as sufficient to deny bond would effectively transform discretionary § 1226(a) detention into mandatory detention.

2026 WL 1458901, at *3. *Lemus Crispin* held that reliance on unlawful status, unauthorized employment, and tax history may violate due process and the individualized-hearing requirement. 832 F. Supp. 3d at 544–45. This is not a novel constitutional gloss; it restates long-settled Board law. In *Matter of Patel*, the Board held that adverse factors of that kind "bear little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding," because "[s]uch a broad interpretation of what constitutes an 'adverse factor' in this context could result in requiring a bond of almost every alien who is held in deportation proceedings." 15 I. & N. Dec. 666, 667 (BIA 1976). The Board continues to cite *Patel* for the proposition that "factors unique to each alien must be evaluated in determining suitability for release on custody." *In re Helia de la Cruz-Palencia*, 2011 WL 2261251, at *1 (BIA May 13, 2011). It follows that a bond hearing "fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases." *Argueta-Portillo v. Bondi*, No. 1:26-cv-122-MSN-LRV, Dkt. No. 16 (E.D. Va. Mar. 2, 2026), *quoted in Lemus Crispin*, 832 F. Supp. 3d at 544. Courts in this District have adopted the same rule. *Villa v. Mullin*, No. 5:26-cv-01690-JDE, 2026 WL 1583941, at *2 (C.D. Cal. June 2, 2026) (quoting *Lemus Crispin*); *Gonzalez Reyes*, 2026 WL 2190830, at *4–*5.

107. *Tiboko-Tifuh* makes the point in the language of proof. The court there held that manner of entry, standing alone, did not meaningfully distinguish the petitioner as unreliable or likely to evade law enforcement, and that generalized assumptions common to many detainees cannot substitute for individualized evidence of future nonappearance. 2026 WL 1603795, at *3–*4. The August 27 Order rests on exactly such assumptions, and says so: the connection it draws is "inferential." August 27 Order at 1.

108. The inference is also questionable on its own terms. Sustained employment ordinarily evidences ties and stability — it is a reason to expect a person to remain in place and appear. *Romero Lopez* questioned how employment history could rationally support an inference of flight risk, observing that it may cut the other way entirely. 2026 WL 1458901, at *3. The August 27 Order treats Petitioner's continuous work since 2020 as evidence that he will abscond, without explaining the step from one to the other. This District has said so directly, adopting the rule that "no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not," and that "steady employment often reflects economic and residential stability and ties to the community in which the noncitizen is employed." *Villa v. Mullin*, 2026 WL 1583941, at *2 (quoting *Lemus Crispin*, 832 F. Supp. 3d at 545); *accord Gonzalez Reyes*, 2026 WL

2190830, at *5; *see also United States v. Adams*, 794 F. Supp. 2d 989, 993 (S.D. Iowa 2011) (steady employment ordinarily supports release pending trial).

109. The factual congruence with *Mendez Trigueros* is close to exact. The Immigration Judge there found flight risk based on illegal entry, failure to pursue legal status, unauthorized employment, alleged tax underreporting, the view that future immigration relief was "speculative," and perceived inadequacy of sponsor evidence. The district court held it had jurisdiction to determine whether those factors were constitutionally permissible, because the question was whether they bore a sufficient evidentiary connection to flight risk rather than whether the reviewing judge disagreed with the weighing. 2026 WL 2321978, at *2–*3. Every one of those six grounds appears in the August 27 Order.

110. *Gonzalez Reyes v. Rios* presents the same configuration within this District: no criminal history, and a denial resting on unlawful entry, unauthorized work and asserted disrespect for United States law, the stage and strength of immigration relief, and the sponsor's inability to pay a substantial bond. 2026 WL 2190830, at *4–*5.

111. Petitioner does not contend that these facts are categorically irrelevant, or that an Immigration Judge may never consider immigration history. He contends that they cannot, standing alone and without any individualized bridge, supply the

entire flight-risk rationale — particularly where the order itself characterizes the connection as merely "inferential." August 27 Order at 1.

**B. The order discounted Petitioner's family ties because of his family members' immigration status.**

112. Having recited the three status-based facts, the order concludes that the flight-risk showing "is even more pronounced because his family ties to the United States consist of his wife, who has no status, and his four children, with only one having status." August 27 Order at 1.

113. Whether the person Petitioner comes home to holds lawful status has no logical bearing on whether Petitioner will appear at his removal hearing. The Due Process Clause protects "all 'persons' . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Courts in this Circuit measure the strength of a noncitizen's connection to the community by "[t]he length of time and the connections Petitioner made with his community during that time," not by the immigration status of his relatives. *Tinoco v. Noem*, 818 F. Supp. 3d 1141, 2025 WL 3567862, at *6 (E.D. Cal. 2025); *accord Garcia v. Andrews*, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025); *Diaz Hernandez*, 2026 WL 2281008, at *3 (petitioner "developed a substantial liberty interest in remaining out of custody based on the length of time he lived in the United States

and the ties he built to the community"); *Reyes v. Santacruz*, No. ED CV 26-3394-E, 2026 U.S. Dist. LEXIS 331946, at *3 (C.D. Cal. July 13, 2026); *Ramirez-Serna v. Mullin*, No. 5:26-cv-02384, 2026 U.S. Dist. LEXIS 118324, at *6–7 (C.D. Cal. May 28, 2026).

114. The reasoning is also internally inconsistent with this Court's finding. On August 21 this Court held that Petitioner holds a protected liberty interest "given that he has lived continuously for at least five years in the United States with his wife and children." August 21 Order at 2. The August 27 Order takes the same wife and the same children and converts them into an aggravating factor, on a ground this Court did not employ.

**C. The order adjudicated the merits of an unadjudicated application and counted its own prediction as a flight-risk factor.**

115. The order states that Petitioner's I-589 "is based upon gang recruitment and violence, which generally is an insufficient basis of persecution," that his "claim for asylum is also likely barred by the failure to file within one year," and that this "speculative relief is yet another flight risk factor." August 27 Order at 1.

116. Petitioner does not contend that the likelihood of relief is categorically off-limits in a custody determination. *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). He contends that the order's treatment of it was not an assessment of

his application but a categorical pronouncement about a class of claims — "gang recruitment and violence, which generally is an insufficient basis of persecution" — announced without a merits record, without a hearing on the application, and without any particularized examination of Petitioner's evidence.

117. The one-year-bar observation compounds the problem. The order says the claim is "likely barred by the failure to file within one year." It makes no finding as to when Petitioner filed, and it does not address the statutory exceptions for changed or extraordinary circumstances. The order thus resolves against Petitioner, in a custody proceeding, a contested legal question governing an application that has never been heard.

118. *Tiboko-Tifuh* rejected materially identical reasoning. The Immigration Judge there speculated that the petitioner was unlikely to prevail and would therefore have nothing to "come back for"; the court held that this was an unsupported inference that could not substitute for evidence of flight risk. 2026 WL 1603795, at *3–*4. *Mendez Trigueros* is to the same effect as to relief characterized as "speculative." 2026 WL 2321978, at *3. Board authority is not to the contrary. *Matter of R-A-V-P-* permits an Immigration Judge to consider the likelihood of relief, 27 I. & N. Dec. 803, 805 (BIA 2020), but *Gonzalez Reyes* held that an Immigration Judge abuses that discretion where he does not "explain how

the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case," and that where the application has not been adjudicated the conclusion is "pure conjecture." 2026 WL 2190830, at *5. So here: the order supplies no explanation why a pending claim for protection makes Petitioner more likely to abscond rather than more likely to appear.

119. The inference also runs backward. A person with a pending application for protection has an affirmative incentive to appear: nonappearance forfeits the claim. Treating the existence of a pending application as evidence of flight risk requires an explanation the order does not supply. *See Padilla*, 704 F. Supp. 3d at 1172 (detention must remain reasonably related to its asserted purpose).

**D. The order treated the sponsor's household finances as evidence of the sponsor's *credibility* and as an independent flight-risk factor.**

120. The order finds Javier "not reliable nor credible given the lack of financial stability." August 27 Order at 1 (emphasis added). It identifies no inconsistency in his testimony, no contradicted statement, and no demeanor finding. Solvency is not veracity, and the order supplies no reasoning connecting the two.

121. The order further reasons that because Javier "appears to employ the Respondent on occasion" without work authorization, "Javier is also violating

United States laws" — and treats that as an additional flight-risk factor. *Id.* at 2. A third party's alleged unlawful conduct is not evidence that Petitioner will fail to appear.

122. Finally, the order treats a sponsor's poverty — "Javier generally spends more per month than he earns"; "Javier's rent is $2,500 per month"; "Javier also has a wife and child to support" — as itself a reason to detain. *Id.* at 1–2. The Ninth Circuit has squarely rejected custody determinations that rest on a detainee's financial circumstances without regard to their actual bearing on appearance. *Hernandez v. Sessions*, 872 F.3d at 990–91. Detaining a person because his brother's monthly balance is negative is not an individualized assessment of nonappearance risk. *Gonzalez Reyes v. Rios* addressed a bond denial resting in part on a sponsor's inability to pay a substantial bond and treated that reliance as a proper subject of habeas review. 2026 WL 2190830, at *5–*6. The court there also faulted the Immigration Judge for "fail[ing] to cite any authority for the proposition that [the sponsor's] income is insufficient," observing that the INA and its regulations supply defined measures of a sponsor's means. *Id.* at *5–*6 (citing 8 C.F.R. § 213a.1 and *Erler v. Erler*, 824 F.3d 1173, 1177 (9th Cir. 2016)). The August 27 Order cites none. *Matter of Dobrotvorskii*, 29 I. & N. Dec. 211 (BIA 2025), does not hold otherwise. It recognizes that a proposed sponsor may be

relevant insofar as the sponsor bears on concrete flight-risk considerations such as a fixed address, community ties, financial support, and assurances of appearance. Id. at 213–14. But it does not hold that a sponsor's limited income or inability to finance a substantial monetary bond, standing alone, establishes that the detainee is likely to abscond.

**E. The order set aside the one record fact bearing directly on appearance.**

123. The order acknowledges that "the Respondent did cooperate with ICE when caught," and disposes of it in a single clause: "that fact alone does not negate the past inability and refusal to follow the laws." August 27 Order at 1.

124. Cooperation with the enforcing agency upon apprehension is the most direct available proxy for whether a person will comply with future obligations. So is the absence of any failure to appear. So is presence at both custody hearings. The order does not meaningfully address these; it declines to let them "negate" a status-based inference. That is not a weighing at all, and it leaves this Court unable to determine that the required assessment occurred. *Tiboko-Tifuh* faulted an Immigration Judge on precisely this ground, for failing to engage with contrary evidence and failing to explain why the adverse evidence outweighed the petitioner's showing of residence, stability, community support, and incentive to

pursue immigration relief. 2026 WL 1603795, at *3–*4; *see also Singh v. Holder*, 638 F.3d at 1208–09. The constitutional defect Petitioner identifies is not that the Immigration Judge weighed the evidence wrongly. It is the absence of a reasoned, individualized explanation connecting the evidence to actual future nonappearance. The Ninth Circuit has repeatedly held that an adjudicator commits legal error when it "fail[s] to offer a reasoned explanation of why the only adverse factor . . . outweighed all of the equities" in the noncitizen's favor, *Yepes-Prado v. INS*, 10 F.3d 1363, 1370 (9th Cir. 1993), when it relies on "an unsupported conclusion with no explanation despite strong evidence to the contrary," *Watkins v. INS*, 63 F.3d 844, 849 (9th Cir. 1995), or when it "distorts or disregards important aspects of the alien's claim," *Saldana v. INS*, 762 F.2d 824, 827 (9th Cir. 1985); *see Tiboko-Tifuh*, 2026 WL 1603795, at *3 (applying these authorities to a flight-risk finding).

**F. The *Mathews* factors confirm the constitutional inadequacy.**

125. **First factor — the private interest.** The interest at stake is "the most elemental of liberty interests — the interest in being free from physical detention." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see also United States v. Salerno*, 481 U.S. 739, 750 (1987). It is

"unquestionably substantial," *Singh v. Holder*, 638 F.3d at 1208, and becomes "particularly pronounced" as detention lengthens, *Vallejo v. Warden*, No. 1:26-cv-05320-DAD-SCR, 2026 WL 2391062, at *2 (E.D. Cal. Aug. 14, 2026). This Court has already found the interest present here. August 21 Order at 2; *see Rodriguez Diaz*, 53 F.4th at 1207.

126. **Second factor — risk of erroneous deprivation.** The risk is high and has already materialized once: Petitioner's first custody request, on July 24, 2026, was refused on a jurisdictional theory the Ninth Circuit foreclosed six days later. *Bostock*, 2026 U.S. App. LEXIS 22798, at *3; *see Diaz Hernandez*, 2026 WL 2281008, at *5 n.2 ("the risk of erroneous deprivation is very high because an Immigration Judge[] has already wrongly determined that Petitioner is not entitled to a bond hearing"). Where the risk of erroneous deprivation is particularly high, "greater protections may be constitutionally necessary in individual cases" even though the statutory scheme is generally adequate. *Sequen v. Albarran*, 806 F. Supp. 3d 1069 (N.D. Cal. 2025); *accord Flores v. Bondi*, 803 F. Supp. 3d 1018 (C.D. Cal. 2025). The safeguard Petitioner seeks is minimal: that the determination actually be individualized and that the reasons be stated. *Singh v. Holder*, 638 F.3d at 1208–09; *Mingxing Sun*, 2026 U.S. Dist. LEXIS 135167, at *1–2.

127. **Third factor — the Government's interest.** The Government's legitimate interests are in securing appearance and protecting the public. **No danger finding was made here**, so only the first is in play. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d at 994. The burden of requiring an individualized rationale is negligible: it is the ordinary work of a custody hearing the agency conducts as a matter of course.

128. Petitioner has therefore been detained since June 18, 2026 on the strength of a custody determination that does not perform the individualized assessment the Fifth Amendment and § 1226(a) require.

**COUNT THREE — Fifth Amendment Procedural Due Process: Continued Detention Without Any Meaningful Determination Whether Less Restrictive Alternatives Would Reasonably Assure Appearance**

129. Petitioner incorporates by reference each preceding paragraph.

130. The Ninth Circuit has held that a constitutionally adequate immigration custody determination requires consideration of the detainee's financial circumstances and of alternative conditions of release. *Hernandez v. Sessions*, 872

F.3d 976, 990–91 (9th Cir. 2017). The court explained the reason: detention is justified only where it is actually necessary to secure the government's interest, and "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by bond or alternative conditions." *Id.* at 994.

131. Courts applying the *Maldonado Bautista* framework have described what an adequate § 1226(a) hearing requires in these terms: an individualized determination, consideration of alternatives to detention, and consideration of the detainee's financial circumstances. *Barahona v. Semaia*, No. 5:26-cv-02580-SSC, 2026 WL 1465141, at *2 (C.D. Cal. May 22, 2026). The petitioner there had asked the Immigration Judge not to treat entry without inspection or lack of work authorization as automatic flight-risk factors; the court ordered an individualized hearing and specifically directed the Immigration Judge to consider alternative conditions of release and the petitioner's financial circumstances. Petitioner asks for no more than that here. *Barahona* also confirms the shape of an adequate order: the court directed that the immigration judge "must exercise discretion to make an individualized determination," "must consider alternative conditions of release,"

and must consider "Petitioner's financial circumstances when setting a bond amount." 2026 WL 1465141, at *2.

132. Congress supplied the mechanism. Section 1226(a)(2) authorizes release on "(A) bond of at least $1,500 . . . ; or (B) conditional parole." 8 U.S.C. § 1226(a)(2). Conditional parole is a release on conditions that requires no payment. The regulations contemplate the same range of outcomes. *See* 8 C.F.R. § 1236.1(c)(8).

133. The August 27 Order considered only subsection (A), and concluded that even that option was unavailable to it. Its final sentence states: "even if the Court were inclined to grant a financial bond, which it is not, it could not do so as Javier has no apparent ability to pay the bond." August 27 Order at 2.

134. Conditional parole is not mentioned. No condition of supervision is mentioned. There is no finding that reporting requirements would be insufficient, that telephonic or electronic monitoring would be insufficient, that a curfew or address-verification condition would be insufficient, or that any combination of conditions would fail to reasonably assure Petitioner's appearance. There is no finding as to Petitioner's own resources or ability to post any amount, however modest. The order contains no comparative analysis of any kind.

135. The single reference to alternatives in the order appears not as an option under consideration but inside the adverse inference: Petitioner's status-based history "inferentially demonstrates he is more unlikely to comply with alternative to detention conditions and court orders." *Id.* at 1 (emphasis added). Alternatives were thus invoked as a reason to deny release, on a presumption of noncompliance, rather than evaluated as the statute's chosen means of managing appearance risk. That inverts *Hernandez*.

**A. Conditioning liberty on a third party's ability to pay is not a permissible basis for detention.**

136. The order's operative holding is that release was unavailable because Petitioner's brother could not finance a bond. *Id.* at 2. On that reasoning, Petitioner's continued confinement turns not on any assessment of his own risk of flight but on the size of a relative's monthly surplus.

137. *Hernandez* forecloses that reasoning. The Ninth Circuit held that consideration of financial circumstances and of alternative conditions of release is "necessary" precisely so that detention does not turn on inability to pay. 872 F.3d at 990–91. Where a detainee cannot afford a bond, the constitutionally required question is whether some other condition would reasonably assure appearance — not whether the money can be found. The August 27 Order never asks it.

138. The point is sharpened by the absence of any danger finding. When the sole governmental interest is appearance, conditions of supervision are the paradigm response. *See Kirykovich v. Hernandez*, No. 26-cv-695, 2026 WL 890459 (W.D. Wash. Apr. 1, 2026); *Rodriguez v. Robbins*, 804 F.3d 1060, 1082 (9th Cir. 2015); *Rodriguez v. Holder*, No. CV 07-3239-TJH, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013). Because detention is the most restrictive means of addressing nonappearance risk, due process requires meaningful consideration of whether less restrictive conditions can reasonably assure appearance before continued detention is imposed. See *Hernandez v. Sessions*, 872 F.3d 976, 990–91, 994 (9th Cir. 2017); *Padilla v. U.S. Immigr. & Customs Enf't,* 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

**B. The failure is independently a failure of the ordered process.**

139. Because the August 21 Order required a hearing pursuant to § 1226(a) and the applicable regulations, the failure meaningfully to consider whether conditions short of detention could reasonably address the asserted risk of nonappearance is also relevant to whether Respondents supplied the individualized custody determination that Order required.

**C. The defect is material.**

140. Petitioner does not ask this Court to select a particular form of release. He asks the Court to determine whether the custody decision meaningfully considered whether any permissible condition or less restrictive alternative could reasonably assure his appearance before concluding that continued detention was necessary.

141.Where continued detention rests on a determination that omitted the statutorily authorized alternative and offered no reasoned explanation for rejecting it, the detention violates due process. *Hernandez v. Sessions*, 872 F.3d at 990–91, 994; *Singh v. Holder*, 638 F.3d at 1208–09; *Sequen v. Albarran*, 806 F. Supp. 3d 1069.

**REMEDY**

142. The relief Petitioner seeks under all three Counts is immediate release. That is the relief this Court's own August 21 Order specifies for a hearing that is not "proper." August 21 Order at 4. It is the relief the Ninth Circuit's conditional-writ framework supplies when a cure fails. *Harvest v. Castro*, 531 F.3d at 750; *Rose v. Guyer*, 961 F.3d at 1246. It is the relief this District has ordered on materially analogous circumstances. *Herrera Ramirez*, 2026 WL 2395217, at *10–*11; *Hernandez Arechiga*, 2026 U.S. Dist. LEXIS 115840, at *8–13; *Zavala v.*

*Semaia*, 2026 WL 2291230; *Munguia v. Warden*, 2026 WL 2434853. And it is the traditional office of the writ. *Preiser*, 411 U.S. at 484.

143. Petitioner has now been detained since June 18, 2026. He has had two custody proceedings. The first was refused outright on a jurisdictional theory the Ninth Circuit foreclosed. The second, held only because this Court ordered it, produced a decision that — on the allegations above — did not perform the determination § 1226(a) and the Due Process Clause require. Requiring a third attempt would extend the deprivation this Court's judgment was entered to bring to an end. *Calixtro v. Mullin*, No. EDCV 26-1797-AS, 2026 U.S. Dist. LEXIS 298025 (C.D. Cal. May 7, 2026) (immediate release "the only effective remedy"); *Archundia-Perez v. Mullin*, No. 5:26-cv-02076-DTB, 2026 U.S. Dist. LEXIS 282766 (C.D. Cal. May 20, 2026); *Midence Garcia v. Santacruz*, No. 5:26-cv-01803-DTB, 2026 U.S. Dist. LEXIS 252659, at *9–10 (C.D. Cal. May 13, 2026). *Gonzalez Reyes* ordered immediate release rather than a further hearing in part because it was "the second time Petitioner has come to federal court to vindicate his rights." *Id.* This is Petitioner's second petition for the same reason.

144. Petitioner recognizes that courts have declined immediate release where a petitioner received a custody determination that was heard and decided on the merits under the correct framework. *See, e.g.*, *Ramirez Sanchez v. Mullin*, No.

5:26-cv-04099-JDE, 2026 WL 2247537 (C.D. Cal. July 31, 2026); *Carrillo Pena v. Casey*, No. 26-CV-04382-BAS-AHG, 2026 WL 2281003 (S.D. Cal. Aug. 7, 2026). Those cases did not involve a hearing conducted under a federal court order that made continued detention conditional on the hearing being "proper," and they therefore had no occasion to consider the consequence of a failed cure.

145. If the Court concludes that a further hearing rather than release is the appropriate remedy, Petitioner requests, in the alternative, the relief granted in *Lucas Juarez v. Perry*, 2026 WL 1419122, at *8 — an order directing a new, constitutionally compliant bond hearing within seven days before a different Immigration Judge, at which Petitioner bears the burden by a preponderance of the evidence consistent with *Bostock* and this Court's August 21 Order, and at which the Immigration Judge is directed to (i) make individualized findings connecting the evidence to Petitioner's actual risk of nonappearance; (ii) expressly consider and address release on conditional parole under 8 U.S.C. § 1226(a)(2)(B) and any conditions of supervision; and (iii) issue a written, reasoned decision sufficient to permit meaningful review — with Petitioner's release if that hearing is not timely and properly held.

## IX. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

(a) Assume jurisdiction over this matter and, pursuant to Local Rule 83-1.3, relate this action to *Garcia Del Solar v. Mullin*, No. EDCV 26-4419-SPG (AS), or in the Court's discretion treat this filing as a motion to enforce the judgment entered in that action;

(b) Order Respondents to show cause why the writ should not be granted, on an expedited schedule;

(c) Order Respondents not to remove or transfer Petitioner outside the jurisdiction of this Court pending resolution of this Petition;

(d) Declare that Respondents failed to provide Petitioner with a "proper bond hearing . . . in compliance with this Court's Order" as required by the August 21, 2026 Order, and that the injunction entered in paragraph (2) of that Order is therefore operative;

(e) Declare that the August 27, 2026 custody determination violated the Fifth Amendment's Due Process Clause because the flight-risk determination was not meaningfully individualized and rested on factors lacking a rational nexus to Petitioner's risk of nonappearance;

(f) Declare that Petitioner's continued detention violates the Fifth Amendment's Due Process Clause because no determination was made whether less

restrictive alternatives, including conditional parole under 8 U.S.C. § 1226(a)(2)(B), would reasonably assure his appearance;

(g) Grant the writ and order Respondents to release Petitioner from custody immediately, and to return any confiscated property and documents;

(h) In the alternative to paragraph (g), order Respondents to provide a bond hearing within seven (7) days before a different Immigration Judge, at which Petitioner bears the burden by a preponderance of the evidence, and at which the Immigration Judge shall (i) make individualized findings connecting the evidence to Petitioner's actual risk of nonappearance, (ii) expressly consider and address release on conditional parole under 8 U.S.C. § 1226(a)(2)(B) and any conditions of supervision, and (iii) issue a written, reasoned decision sufficient to permit meaningful review — and order Petitioner's release if that hearing is not timely and properly held;

(i) Order Respondents to file a notice of compliance within three (3) days of entry of judgment; and

(j) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Cesar O. Montoya (SBN: 320291)
MCM LAW GROUP, P.C.
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: September 15, 2026

**PROOF OF SERVICE**

I hereby certify that on September 15, 2026, I served a copy of the attached PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS, by EMAIL DELIVERY to:

U.S. Attorney's Office:

**USACAC.ImmHabeas@usdoj.gov**

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

/s/ Cesar O. Montoya (SBN: 320291)
MCM LAW GROUP, P.C.
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: September 15, 2026